## Henry S. Austin et al.

### v.

## Peter Wohler et al.

1.   Mechanics' Lien — Contract partly expressed and partly implied.—In a proceeding to enforce a mechanic's lien, where the contract is expressed as to what materials shall be furnished, or work done, but silent as to the time of performance, the law will imply that it was to be preformed within a reasonable time.

2.   Limitation of time for performance.—Where the contract was express as to the work to be done, and materials to be furnished, and implied as to the time of performance, a performance within one year from the commencement of the work is a sufficient compliance with the present law relating to mechanic's liens.

3.   Variance.—The petition alleged a contract in writing and express, and the proofs showed a contract partly in writing and partly in parol, and it was contended there was a variance. *Held*, that the contract being set out *in extenso* in the petition, any error in stating its legal effect will be rejected as surplusage.

4.   Description of premises in the contract.—Where a contract is made to furnish materials for a building in process of erection, it is sufficient, although the ground on which it is to be erected is not described, so, where the original contract sufficiently described the houses and lots, and a supplemental contract was afterwards made for furnishing materials for six other houses being built by the same parties, and describing the premises as "the south six lots," *held*, that the two would be construed as one contract, and there was a sufficient description.

5.   Parol contract — Sale — Subsequent written contract. — Where the contract under which petitioners agreed to furnish materials was by parol, and after making such contract the lots were sold, and deed recorded, and subsequently such contract was merged in a written agreement with the former owner of the land, the petitioner is not entitled to a lien, there being nothing to show that the written contract declared upon was simply a reduction to writing of the previous parol agreement.

6.   Incumbrances.—The intervening petition of certain creditors claiming to hold incumbrances upon the premises superior to the rights of the lien petitioners, fails to show that at the time of filing the petition for a lien they were creditors, a fact which it was incumbent upon them to prove if they would avail themselves of the six months' limitation in the lien law.

7.   Purchaser with notice.—A party purchasing premises on which buildings are in process of erection, having knowledge of the same, is bound to make inquiry as to the rights of parties furnishing materials or performing work thereon, and is charged with constructive if not actual notice of their lien. A sale of property after the lien is fixed, to a party cognizant of the same, gives him no rights as against the lien.

Austin v. Wohler.

Appeal from the Circuit Court of Cook county; the Hon. W. W. Farwell, Judge, presiding. Opinion filed March 2, 1880.

Messrs. Wilson & Jones, for appellants; contended that the second contract is not supplemental to the first but a distinct contract, and cited Peck v. Hopgood, 10 Met. 172; Burnett v. Lester, 53 Ill. 325; Ryan v. Shawnetown, 14 Ill. 20.

The written contract becomes the entire contract, and under it alone the lien is created: Lane v. Sharp, 3 Scam. 567; Phillips v. Stone, 25 Ill. 77; Fish v. Stubbings, 65 Ill. 492; Belanger v. Hersey, Ill. Syn. Rep. 105.

The *cestui que trust* under the trust deeds should have been made a party defendant: Williams v. Chapman, 17 Ill. 422; Lomax v. Dore, 45 Ill. 379; Dunphy v. Riddle, 86 Ill. 22; Crowl v. Nagle, 86 Ill. 437; Bayard v. McGraw, 1 Bradwell, 134.

There is a fatal variance between the allegations and proof: Bush v. Connelly, 33 Ill. 448; Rowan v. Bowles, 21 Ill. 17; Power v. McCord, 36 Ill. 214; Phillips v. Stone, 25 Ill. 77.

The decree is made personal as to purchasers while the proceeding as to purchasers not privy to the contract is simply *in rem:* McCarthy v. New, Ill. Syn. Rep. 198.

Messrs. Abbott & Oliver, for appellee Wohler; that where the contract is set out in the pleading an incorrect statement as to its legal effect will be surplusage, cited Mass. Mut. Life Ins. Co. v. Kellogg, 82 Ill. 614; Binz v. Tyler, 79 Ill. 248; North v. Kizer, 72 Ill. 172; Greenwood v. Anderson, 8 Tex. 225; Gilchrist v. Gilmer, 9 Ala. 985; Herrick v. Graves, 16 Wis. 157; East Boston Co. v. Persons, 2 Hill, 126; Adams v. Way, 32 Conn. 160; Morehouse v. Northrup, 33 Conn. 380.

Objection to the form of the allegations must be raised by special demurrer: Story's Eq. Pl. § 528; Mass. Mut. Life Ins. Co. v. Kellogg, 82 Ill. 614; Board of Education v. Greenebaum, 39 Ill. 610; Cummins v. Woodruff, 5 Ark. 116.

Everything which the contract does not express in writing may be shown by parol: Lombard v. Johnson, 76 Ill. 599; Power v. McCord, 36 Ill. 214.

An objection to a misjoinder, apparent upon the face of the petition must be taken by demurrer: 1 Daniell's Ch. Pr. 352; Abbott v. Johnson, 32 N. H. 9; Gibbs v. Claggett, 2 Gill. & J. 14; Bartlett v. Boyd, 34 Vt. 256; Am. Ex. Co. v. Pinckney, 29 Ill. 392.

A party cannot demur a second time for the same cause after demurrer overruled, unless a material amendment to the petition is made: Baker v. Mellish, 11 Ves. 68; Booth v. Stamper, 10 Geo. 113; Atty. Gen. v. Cooper, 8 Hare, 166; Cresy v. Bevans, 13 Sim. 353; Atkinson v. Hannay, 1 Cox, 360.

Where a defendant makes his answer as broad as the general issue at law, he waives the question of multifariousness in the petition: Clark v. Phelps, 6 Johns. Ch. 214; Beauchamp v. Gibbs, 1 Bibb, 481; Robertson v. Bingley, 1 McCord Ch. 352; Jones v. Earl Strafford, 3 P. W. 80.

Failure of the court to notice an objection of multifariousness raised by answer, cannot be assigned for error: Labadie v. Hewitt, 85 Ill. 343; Oliver v. Piatt, 3 How. S. C. 412; Boyd v. Hoyt, 5 Paige, 79.

Upon the question of the right to a lien under the contract: Orr v. N. W. Mut. Life Ins. Co. 86 Ill. 260; Heiman v. Schroeder, 74 Ill. 158; Warren v. Harris, 2 Gilm. 307; Callahan v. Caffarata, 39 Mo. 141.

As to the rights of holders of incumbrances: Wilder v. De Wolf, 24 Ill. 190; Hall v. Burton, 29 Ill. 321; Finch v. Martin, 19 Ill. 112.

The decree may be amended or modified by this court: Work v. Hall, 79 Ill. 196; Rev. Stat. 1874, Chap. 110, § 82; Carroll v. Crane, 4 Gilm, 563; Hunter v. Hatch, 45 Ill. 178.

Appellees are entitled to costs for furnishing an abstract, that of appellants being incomplete: Walden v. Lewis, 71 Ill. 453; Phelps v. Funkhouser, 40 Ill. 27.

Messrs. DECKER, FRENCH & DOUGLAS, for other appellees; that if one of the firm of Keeney & Co. owned the land, the lien is good, cited Van Court v. Bushnell, 21 Ill. 627; Roach v. Chapin, 27 Ill. 194.

The claim could be apportioned to each lot without difficulty: Culver v. Elwell, 73 Ill. 536.

Austin v. Wohler.

The decree may be amended: Work v. Hall, 79 Ill. 197.

Parol evidence is admissible to show when a written contract is to take effect: Greenleaf's Ev. § 285; Blake v. Fash, 44 Ill. 302.

The lien of Dufour & Co. had taken effect under the verbal agreement when Austin purchased the property: Rev. Stat. Chap. 82, § 17; N. P. C. of Chicago v. Jevne, 32 Ill. 214; Theilman v. Carr, 75 Ill. 385.

If Austin, as owner, had knowledge that materials had been furnished before he purchased, and had the date inserted in the deed for the purpose of cutting off intervenors' rights, he should be estopped from claiming ownership as against them: Higgins v. Ferguson, 14 Ill. 269; Donaldson v. Holmes, 23 Ill. 85; Smith v. Newton, 38 Ill. 230; Swartz v. Saunders, 46 Ill. 18; Winchell v. Edwards, 57 Ill. 41; Hefner v. Vandolah, 57 Ill. 520.

The fact that record of the deed may be constructive notice, has no bearing if Austin remained silent when he should have spoken: Cochran v. Harmon, 22 Ill. 345; Loyd v. Lee, 45 Ill. 277; Brooks v. Record, 47 Ill. 30; Kane County v. Harrington, 50 Ill. 232.

The parties claiming priority by reason of holding incumbrances, should have shown affirmatively that they came within the six months' limitation: Canon v. Norton, 14 Vt. 178; De Lavergne v. Easton, 9 Paige Ch. 181; Lorillard v. Oester, 5 Paige's Ch. 172; Creswell v. Watkins, 71 Ill. 488.

BAILEY, P. J. On the 9th day of August, 1876, Peter Wohler filed his petition against Durham F. Keeney and others, for a mechanic's lien on twelve lots, numbered from 71 to 82, inclusive, in a certain subdivision in Chicago, for labor and materials furnished by him in the construction of buildings thereon. The petition avers that on or about the 25th day of October, 1875, the petitioner entered into a written contract with Durham F. Keeney, Charles P. Keeney and Charles M. Warren, co-partners, doing business under the firm name of D. F. Keeney & Co., a copy of which contract is appended to and made a part of said petition. Said contract bears date the

day last aforesaid, and is executed by the petitioner of the first part and D. F. Keeney & Co. of the second part, and is as follows:

" The party of the first part agrees to furnish all material of every sort and kind, and perform all labor required to complete one basement and one parlor-story stairs for six buildings situated on Tompkins street, between Loomis and Laflin and Polk and Taylor, and under the superintendence and to the satisfaction of H. T. Bolles, and according to plans and specifications, for the sum of $80 per house. The parties of the second part agree to pay, or cause to be paid, to the party of the first part or his heirs or assigns the sum of $80 per house, as follows: When the houses are plastered the first coat of mortar, $40; the balance on the completion of said buildings, and on the superintendent's certificate."

The petition further avers that at the time of the execution of said contract, said Durham F. Keeney was the owner in fee of all of said lots, and that said D. F. Keeney & Co. were then erecting six buildings on the lots numbered from 71 to 76; that the petitioner thereupon furnished the necessary materials and entered upon the construction of said stairs in accordance with said contract; that during the progress of said work, and before any of it had been placed in the buildings, to wit, on the 10th day of November, 1875, the petitioner made a further agreement in writing with said D. F. Keeney & Co., amendatory of and supplementary to said contract, to do similar work in six other houses said D. F. Keeney & Co. were then erecting on the other six of said lots, the same being situated immediately south of the six lots first mentioned. Said supplementary agreement was written on the same sheet with the original agreement, and immediately following it. It was without date, and, omitting the signatures of the parties, was in the following words:

" It is hereby further agreed by the first party that he will build the stairs in the south six houses, in good, workmanlike order, and similar to the stairs built in the north six houses, and according to this contract."

The petition further avers that no particular time was spec-

ified during which the petitioner was to complete the work, but, impliedly, he was to have a reasonable time for its completion, from and after the making of said contract; that in pursuance of said contract and the supplement thereto, the petitioner furnished the materials and performed the labor required to complete the said basement and parlor story stairs in each of said twelve houses, to the satisfaction of the superintendent and in accordance with the plans and specifications; that the petitioner completed said work within a reasonable time after the making of his said contract, to wit, on the 24th day of April, 1876, and within one year from the date of the contract, and less than six months prior to the filing of the petition; and that on the 10th day of May, 1876, the superintendent delivered to the petitioner a final certificate of the completion of the work in said twelve houses, according to the contract and the amendment thereto.

The petition admits the payment of $480 on said contract, and claims a balance of $480, for which sum and interest the petitioner prays to have a lien in his favor established on said lots and the buildings thereon.

On the 31st day of October, 1876, Hillary Dufour, Peter C. Dufour and Ebenezer Rowe, comprising the firm of Dufour Bros. & Rowe, filed their intervening petition, alleging that on or about November 5, 1875, the intervening petitioners entered into a verbal contract with D. F. Keeney & Co., to furnish material for and manufacture and deliver all the sash, doors, blinds and inside finishing stuff for each of said twelve houses then being erected as aforesaid by said D. F. Keeney & Co. on said twelve lots owned by said Durham F. Keeney; that said materials were to be furnished by said intervening petitioners according to certain plans and specifications therefor; that under said verbal contract, said work was to be performed and said materials delivered so that said houses could be fully completed on or before the 1st day of May, 1876; that said D. F. Keeney & Co. were to pay the petitioners therefor the sum of $3,395.44; that from time to time from November 5, 1875, they furnished sash, doors, blinds, etc., in various amounts as the same were required in the building of said houses, until the 24th day of

January, 1876, when said verbal or original contract was reduced to writing.

The petition also alleges a further verbal agreement between the intervening petitioners and said D. F. Keeney & Co., made about the fifth day of November, 1875, by which the former were to furnish certain other materials to be used in the erection of said houses, the same to be paid for by said D. F. Keeney & Co., on or before the first day of May, 1876; that under said last mentioned verbal agreement, they furnished materials for said houses at various times, from December 31, 1875, to February 29, 1876, amounting in all to the sum of $141.96, no part of which had been paid.

The petition further alleges that on the 24th day of January, 1876, the intervening petitioners entered into a written contract with said D. F. Keeney & Co., whereby said petitioners were to furnish all the sash, doors, blinds and inside finishing goods for said twelve houses, according to plans and specifications therefor; that said D. F. Keeney & Co. were to pay or cause to be paid to the petitioners for the same, the sum of $3,395.44, as follows: $1,000 when the brown coat of plastering should be on said houses, provided the petitioners should by that time have furnished that amount of materials, and the balance when said houses should be finished; that by the terms of said contract said petitioners were to furnish said materials within a reasonable time, so that said houses could be fully completed on or before the first day of May, 1876; that the petitioners had been paid the sum of $1,300 on account of the materials furnished under said written contract, and that there remained due and owing to them under the written contract, the sum of $2,095.44, and also said sum of $141.96 under one of the verbal contracts above mentioned, making in all the sum of $2,237.40, and for which sum, and interest from May 1, 1876, the intervening petitioners claim a lien on said premises.

The several members of the firm of D. F. Keeney & Co., and also a large number of other persons having or claiming some interest in the premises were made parties defendant, most of whom appeared and answered. On the hearing on

petitions, answers, replications and proofs, a decree was entered declaring a lien in favor of said Wohler for the sum of $40 on each of said twelve lots, except lots 71 and 80; and also finding a balance due the intervening petitioners of $2,629.35, said sum being the amount claimed by them in their petition, and interest up to the date of the decree, and declaring a lien in their favor on each of said lots, except said lots 71 and 80, for one-twelfth of said sum, viz., $219.11. It appears that prior to the decree, lot 71 had been released by both the original and intervening petitioners from their respective liens, and that lot 80 had been sold under a prior incumbrance in favor of a person not made a party to the suit within the time limited by the statute. From the foregoing decree, Henry S. Austin, Esther M. Wilson, Thaddeus Winter and Rufus S. King, four of the defendants, have appealed to this court.

Said Austin was made a party to both the original and intervening petitions at the time of filing the same. He, however, sets up in his answer, and the decree finds, that on the 16th day of December, 1875, said lots 77 to 82, inclusive, were conveyed to him by said Durham F. Keeney, and that the deed of conveyance was recorded January 9, 1876. Esther M. Wilson was made a party to the intervening petition at the time the same was filed, but was not made a party to the original petition until May 11, 1877. She sets up in her answer, and the proof shows, that by deed dated April 25, 1876, and recorded April 29, 1876, said Durham F. Keeney conveyed to her in fee said lot 76. Thaddeus Winter was made a party to the intervening petition October 31, 1876. It appears that at a sale of lots 73 and 74, made January 31, 1877, under deeds of trust executed thereon by said Durham F. Keeney, dated October 16, 1875, and recorded on the 14th and 16th days of March, 1876, said Winter became the purchaser of said lots. The answer of said Winter was not filed until after said sale, and he thereby claims title under the sale, but does not disclose who was the beneficial owner of said incumbrance prior to the foreclosure thereof. The notes secured by the deeds of trust were drawn by Keeney, the maker, payable to his own order, and it does not appear when they were negotiated, nor whether they

were outstanding at the time of the filing of the original or intervening petition. Said King was made a defendant on his own motion, about two years after the commencement of the suit, and in his answer he claims to be the owner of two notes of $1,500 each, executed by said Durham to Keeney, payable to his own order, and secured by deeds of trust on lots 72 and 75, and indorsed and negotiated by Keeney to King on or about the 15th day of June, 1876. No proof was offered by said King showing the time of the negotiation of said notes to him, nor does such fact otherwise appear from the record, except by the averments of said answer not sworn to.

The decree makes the liens of both the original and intervening petitioners superior to the rights of each of the several defendants who have appealed. The only errors assigned which need to be considered, are those which call in question the propriety of the decree in this respect.

It is strenuously urged, that under the statute, Wohler, the original petitioner, cannot be entitled to a mechanic's lien for labor and materials furnished in pursuance of the contract set up in his petition. It is claimed that said contract, being an express contract, and no time being fixed and agreed upon therein for the performance of the labor or the furnishing of the materials within three years from its execution, no lien can attach.

The act of 1874 in relation to mechanic's lien provides that any person who shall, by contract, express or implied, or partly expressed and partly implied, with the owner of any lot or piece of land, furnish labor or materials in building any house or other building on such lot, shall have a lien upon the land and building for the amount due him for such labor or materials. It further provides that when the contract is expressed, no lien shall be created under said act, if the time stipulated for the completion of the work or the furnishing of the materials is beyond three years from the commencement thereof, or the time of payment beyond one year from the time stipulated for such completion; but if the work is done or the materials are furnished under an implied contract, no lien shall be had by virtue of said act, unless the work shall

be done or the materials furnished within one year from the commencement of the work or the delivery of the materials.

This statute is broader than any preceding statute in its enumeration of the various classes of contracts under which mechanics' liens may arise. The mechanic's lien law of 1845 applied only to express contracts, and under that law no lien could arise where the contract was implied. Rowley v. James, 31 Ill. 298. The law of 1845 contained the same limitation which the present statute applies to express contracts, viz: that the time of completing the contract should not be extended for a longer period than three years, nor the time of payment beyond the period of one year from the time stipulated for the completion thereof. It was accordingly held under that law that the time for the performance of the labor and the delivery of the materials must be specified in the contract, and must be within the period thus limited, otherwise no lien could attach. Cook et al. v. Heald et al. 21 Ill. 425; Cook et al. v. Vreeland, Id. 431; Senior v. Brebnor et al. 22 Id. 352; Moses v. Matt et al. 24 Id. 198; Coburn v. Tyler, 41 Id. 354; Baxter v. Hutchings et al. 49 Id. 116; Beasley et al. v. Webster, 64 Id. 458; Powell et al. v. Webber et al. 79 Id. 134; McClurken et al. v. Logan et al. 23 Id. 79; Berlanger v. Hersey et al. 90 Id. 70.

By the act of February 18, 1861, the lien law was extended to implied contracts. By that act a lien was given in cases where no price was agreed upon, or no time expressly fixed for the payment, or for the furnishing of the labor or materials, provided the work was done or materials furnished within one year from the commencement of the work or of the furnishing of the materials. Public Laws 1861, p. 179. It has been held that the provisions of the act of 1861 only extended to implied contracts. Powell et al. v. Webber et al. *supra.*

The present statute enumerates another class of contracts not recognized by either of the former acts, viz., contracts "partly expressed and partly implied." If we should give a literal interpretation to the language by which the statute applies the several limitations therein contained to the various classes of contracts, it would seem that neither has any application to this third class. In the case of Orr v. N. W. Mut.

Life Ins. Co. 86 Ill. 260, however, the Supreme Court has so construed the statute as to bring this class within its limitations. They say: "It was, we think, intended where the terms of the contract are partly expressed and partly implied, to limit the express terms by the same limitation, so far as applicable, as is applied to express contracts, and the implied terms by the same limitation, so far as applicable, as is applied to implied contracts."

The classification of contracts adopted by the legislature in the present mechanic's lien law, although not usually recognized by law-writers, does not necessarily involve a legal solecism, as has been suggested. It is undoubtedly the general rule that where parties enter into an express contract, the law will not imply a contract between them, as to the same subject matter. It is only where the parties do not expressly agree, that the law interposes and implies a promise. Walker v. Brown, 28 Ill. 378. In Ford v. McVay, 55 Ill. 119, the rule is stated thus: "An implied contract cannot arise where there is a subsisting express contract covering the entire subject-matter." Consistently with this rule, however, it is held that in many cases where the parties have left matters material to their rights undisposed of by the express agreement, the law will interpose, and, by implication, supply the terms thus omitted. This legal implication, rests upon the presumption that the parties to the contract would have expressed that which the law implies, had they thought of it, or had they not supposed that it was unnecessary to speak of it because the law provided for it. 2 Pars. on Cont. 515.

The cases where this implication most frequently arises are where a promise is made, but no time specified for its performance. There the law implies a promise of performance within a reasonable time. This omitted provision, which is thus supplied by operation of law, becomes, to all intents and purposes, as much a part of the contract between the parties as though it had been written into it at the time of its execution.

In the present case the petitioner attempts to set up a contract partly expressed and partly implied. So far as the parties expressly agreed, their agreement was reduced to writing, and a copy of the writing is made a part of the petition. There

being no express stipulation as to the time within which the labor was to be performed, and the materials furnished, the petition avers that by implication of law the petitioner was given a reasonable time for the performance of the contract on his part, and that the contract was performed within such reasonable time, which was less than one year from the commencement of such performance. We think that a case of a contract partly expressed and partly implied within the meaning of the statute, is here stated. The petitioner, by his agreement with the owner of the land, undertook to furnish certain labor and materials, but the agreement was silent as to the time within which the same should be furnished. The law thereupon interposed and annexed to the agreement a condition that they should be furnished within a reasonable time. Fowler et al. v. Deakman, 84 Ill. 130. The contract, then, which the law recognizes and will enforce may be viewed as consisting of two parts, viz., that which the parties agreed upon, and that which arises by implication of law. There can be no impropriety, then, in classing it as a contract partly expressed and partly implied.

Which of the two limitations provided by the statute, then, should be held to apply? It will be noticed that the feature of the contract upon which alone the limitation depends is the time of performance. That portion of the present contract is implied, and there is no other portion to which either limitation is applicable. Adopting, then, the rule laid down by the Supreme Court, and limiting the implied terms by the same limitation, so far as applicable, as is applied to implied contracts, the case is brought entirely within the rule governing implied contracts, so far as relates to the time of performance by the mechanic.

The case of Orr v. N. W. Mut. Life Ins. Co. *supra,* was a petition for a mechanic's lien, and the proofs in the case established an express agreement by the petitioner to furnish hardware and materials at the lowest market price, as they should be needed from time to time in the construction of the buildings. No amount of materials was specified, and no time fixed for the completion of the buildings. This was held to be a

contract partly expressed and partly implied within the meaning of the lien law.

The case of Berlanger v. Hersey et al., *supra*, is referred to as holding a view opposed to the one we have here taken. That case arose under the present statute, and a lien was sought to be established under an express contract originally in writing, but afterwards superseded by a verbal contract in the same terms. The time for performance does not seem to have been expressly fixed by the contract nor was there any averment in the petition that it was to be performed within three years. The case was held to come within the rule applicable to express contracts, and to a suggestion that the contract might be regarded as partly expressed and partly implied it was answered that no such case was made by the petition; that the petition did not set up and rely upon a contract partly expressed and partly implied, but solely upon an express contract.

In the present case, the petition sets up by proper averment a contract partly expressed and partly implied, and as the proofs show that the work was in fact done and materials furnished within one year from the commencement of the work, we see no infirmity in the case presented by the petitioner, so far as his contract is concerned.

Appellants allege variances between the contract described in the petition and the one established by the proofs. The variances pointed out are, that the petition avers a contract in writing, while the proof shows a contract partly in writing and partly in parol; also that the petition alleges an express contract, while the proof shows a contract partly expressed and partly implied. It is a sufficient answer to the points here made to say that the contract is set out *in extenso* in the petition, and when that is the case, any errors in stating its terms or its legal effect will be rejected as surplusage. In Mass. Mut. Life Ins. Co. v. Kellogg, 82 Ill. 614, it was held that where a declaration sets out the contract *in hæc verba*, and then states its legal effect incorrectly, the latter will be treated as surplusage, and there will be no variance. We are unable, however, to perceive any variance in the averments themselves. We think they state the contract according to its legal effect.

It is further objected that the petitioner's supplementary contract is void for uncertainty. The lots are therein described "the south six lots," and if that portion of the contract stood alone, it might be difficult to identify the property sought to be described. The supplementary contract, however, is merely an amendment to or modification of the original agreement, and the two are to be construed together as one instrument. The original agreement describes the lots on which the buildings therein mentioned were being erected with sufficient certainty for all the purposes of identification. It appearing that the owners of the premises were erecting twelve houses at the place described in the original agreement, it will be presumed that the amendment described the south six buildings and the original agreement the north six. In Power et al. v. McCord et al. 36 Ill. 214, it was held that where a contract is made to furnish materials for a building in process of erection, it is sufficient, although the ground on which it is to be erected is not described.

Turning now to the case made by the intervening petitioners, there seem to be three separate and independent contracts set up in their petition. They are, 1, a verbal contract, entered into November 5, 1875, by which they were to furnish the sash, doors, blinds and inside finishing stuff for all of said buildings; 2, a verbal contract made on or about the same date, by which they were to furnish certain other materials for said buildings, and on which the sum of $141.96 was furnished; and 3, an agreement in writing entered into on the 24th day of January, 1876, by which they were to furnish the same materials enumerated in the first contract.

It appears that after the making of the first and second contracts, and before the date of the third, six of said lots, viz, lots numbered from 77 to 82, inclusive, were conveyed by said Durham F. Keeney to defendant Austin in fee, and the deed duly recorded. At the time the third contract was made, Durham F. Keeney was not the owner of the lots, and we are unable to see how the intervening petitioners can maintain a lien upon the lots so conveyed for work done and materials furnished under that contract. The statute gives a lien only for-

work done or materials furnished pursuant to a contract with the owners of the land. The contract of January 24, 1876, was not made with the owner.

It is said, however, that at the time the first of said contracts was made, it was agreed that it should afterwards be reduced to writing, and that the written contract of January 24th was merely the verbal contract of November 5th reduced to writing in pursuance of said agreement. Such may have been the case, but such is not the case made by the intervening petition. The petition alleges, it is true, that the verbal contract of November 5th was reduced to writing on the 24th day of January, but there is no averment that the written contract afterwards set out in the petition was the verbal contract so reduced to writing. On the contrary, the written contract is set out and declared upon as a contract made and entered into on the 24th day of January, and there is no averment by which it is in any way connected with the preceding verbal contract. If the petitioners desired to show that the written contract, although dated January 24th, was in fact made on the 5th day of the preceding November, such facts should have been averred in the petition. The decree finds that the written agreement is identical with the verbal one, but in that respect the decree is not supported by any averment of the petition, and so cannot be sustained.

It may be further observed that the petition alleges that the entire amount claimed to be due, except the $141.96, is due and owing under the written contract. As the petition now stands, there is no foundation for any lien on said six lots conveyed to Austin, unless it be for so much of the $141.96, as was expended on said lots, respectively.

So far as the rights of defendants Winter and King are concerned, we are unable to see that the decree has done them any wrong. It is true, they were not made parties within the six months limited by the statute for the institution of a suit to enforce a lien against a creditor or incumbrancer, but they have both failed to show that at the time of the filing of the petition, or intervening petition, they occupied the relation of creditors or incumbrancers. The law raises no presumption on this

subject one way or the other, and it was, therefore, a matter which it was incumbent on them to prove. The fact that they now hold incumbrances which antedate the filing of the petitions, or titles matured through such incumbrances, does not show it, particularly since the incumbrances are deeds of trust securing notes drawn payable to the order of Keeney, the maker, the date of the negotiation of which is not shown. So far as appears, said notes may have remained in the hands of Keeney, until after the filing of the petitions, or may have been in the hands of some of the other parties who were made defendants within the time limited by the statute. It was for those claiming rights through these incumbrances, and not for the petitioners, to show the history of the notes, so that it might be seen that at the time of the commencement of the suit they were outstanding in the hands of some one not made a party.

Defendant Esther M. Wilson is not an incumbrancer, but a grantee of Keeney. The six months limitation provided by section 28 of the lien law applies to creditors and incumbrancers, and not to purchasers of the estate. The deed to this defendant was executed on the 25th day of April, 1876, about the time the buildings were completed, but she admits in her answer that she entered into a contract with Keeney for the purchase of said property in November, 1875, and that at the time said contract was made, the building on the lot purchased by her was in process of erection. Such facts were sufficient to put her upon inquiry as to the rights of petitioners, and charge her with constructive, if not actual, notice of their liens. A sale of property, after the lien is fixed, to a party cognizant of the incumbrance gives him no rights as against the lien. Chicago Artesian Well Co. et al. v. Corey et al. 60 Ill. 73. The title taken by this defendant was subject to the liens of the petitioners.

We have to say, in conclusion, that while the record in this case is voluminous, and the facts complicated, we have been furnished with but meagre assistance in obtaining a knowledge of the facts involved in the appeal by either the abstracts or briefs of the appellants. Especially is their abstract inadequate. Counsel should be admonished that it is their duty to

so abstract the record as to give us all reasonable aid in ascertaining the facts material to a proper decision of the case.

For the error in decreeing a lien in favor of the intervening petitioners on the six lots conveyed to defendant Austin, the decree will be reversed at the costs of the intervening petitioners, and the cause remanded for further proceedings not inconsistent with this opinion; the costs of said Wohler's additional abstract to be taxed against appellants.

Decree reversed.